Thank you, Your Honor. May it please the Court, I'm Steve Parsons, Counsel for the Appellant, Plaintiff in the action below. Your Honors, this case seems to be relatively simple and turns upon operative law that seems to be well established in all but this circuit. The question presented by the Appellant is whether or not the, if you will, the reverse preemption of McCarran-Ferguson works to exempt policies of insurance from the Federal Arbitration Act. Here, we pointed out that provisions of NRS 695 provide that contracts of insurance as provided by non-profit hospitalization and medical corporations, which Before you get there, don't you have to address the waiver argument made by the Appellee that your waiver was not timely raised? Your Honor, I don't believe so. I believe that in the two first hearings before the Court Well, the point is that that's an issue and I think you have to address it. Maybe you don't believe so, but you have to tell us why you don't believe so. Your Honor, I think And tell us why also, why participating in the arbitration in and of itself is a waiver. I respect that, Your Honor. First of all, if I could address those in reverse order and first address Judge O'Scanlan's point. Your Honor, the order referring us to the arbitration was not interlocutorially appealable. The Court stayed the action referring us to arbitration, so therefore there was no relief for the plaintiff appellant at that point in time. It was a situation where we were compelled by the Court to go forward, and since the action was stayed and it wasn't final, there was no basis upon which to seek an appeal to this Court. Isn't a stay appealable? I mean, that kind of amounts to an injunction, isn't it? A stay? I don't believe it is, Your Honor. If it is, it's something I erred upon. I did not view it that way. I viewed in which the Court still had ongoing jurisdiction and we were compelled to go participate in this unenforceable arbitration provision. As far as the issue of whether or not it constitutes a stop or a waiver, I would point out to the Court, and the excerpts of record bear this out, and upon our initial motion to the Court, which was heard by the Magistrate's Court, the Court did find that there was an estoppel of the appellee defendant from going forward with its argument. When you say your initial motion to the Court, what are you referring to? The plaintiff's motion to not compel arbitration in this matter. It was held before, I believe, if I recall, the Magistrate Larry Levitt, at which point he found that there had been waiver and estoppel. That was then readdressed by the District Court. The only point I'm making, Your Honor, is that to say that somehow we failed to raise it, I will submit that there's certainly not the word estoppel raised anywhere in my brief below. However, the argument was clear, and I think unequivocal, that we felt that the company had not complied with its own contract, and thereupon they were stopped from asserting it once in litigation. Counsel, does the Niem case, N-G-H-I-E-M case, tell us anything about it? I'm not familiar with that, Your Honor. I apologize. I might also point in my own defense that I was not the writer of these briefs, and at the last moment was substituted for my associate to come up here. So I apologize if I'm not readily facile with the case. Did the appellant make any record in the arbitration proceeding itself that she was planning to challenge and decline to participate in the confirmation of any award regardless of the outcome before the outcome was heard? Yes, Your Honor. In fact, I might also point out that for a second time after the first order was issued, we attempted to exempt ourselves of the arbitration provision in the District Court. I might point out also that while the record constrained by the arbitrator was quite small, he was an electrical contractor as an arbitrator and was demonstrably not familiar with either rules of evidence or the fact that the objection may preclude his participation. I might also point out that I believe it's well stated in the briefs that we were not referred to the AAA. We were referred to the thence unknown Nevada Arbitration Association, which failed at all times to provide us any rules or any understanding of their proceedings. So, for an example, even if we take their clause as enforceable, where it provides that rules must be provided to an appellant within the product, that did not occur. So we were, in essence, before that jurisdiction without the guidance of what else we might do. Continuing on, if I may, assuming that the Court wishes to hold it and hear this in reverse order and that it's concerned about whether or not the plaintiff appellant has waived its arguments of estoppel, I would point out that in any event, the contract is unenforceable under Nevada law. Chapter NRS 695, which regulates solely the provision of policies of health insurance by non-profit hospital corporations such as the appellee Rocky Mountain, has a provision at section 181 that's unambiguous. I might point out, sort of in preemptive strike, that the appellee's argument that somehow the operative word may in the statute doesn't seem to preclude they're using an ad hoc or fugitive statute, or excuse me, fugitive plan, seems to me to be wholly disingenuous. It is not a situation where the chapter says, here's one alternative, you can choose your own. This is a proscriptive statute, which by its very nature says that if you include the provision, it must have these minimum standards. The carrier then chose for its own reason to disregard that, well aware that that was the statutory law of Nevada. As such, to come back later now and say notwithstanding the fact that we agree the statute imposes certain standards upon us, we believe that it's permissive because of the word may. Obviously, such a result would be absurd and frustrate the legislative intent of the people of Nevada, who have a broad and strong public policy interest in protecting insurers from that very kind of an action. If we take the premise for the moment that the provision is at least suspect, and we look then at the two different provisions, that by statute and that which was provided for in Rocky Mountain, you can see the glaring disparities between what the state legislature intended to protect the people of Nevada with versus what this carrier put in its adhesionary contract, which was not drawn to the attention of the appellant and which was not given to her as a benefit but, in fact, used as a defense by them later to her action. If in no other regard, I would point out to the court that the appellant was forced to pay $1,200 to obtain the arbitrator's award, that is in clear violation of the Nevada statute. It was a situation where after comporting with the court's order, after comporting with the arbitrator's requirements, we were not going to be told the results of this without paying that $1,200 fee. If I may point out the Smith case, which talks about the reverse preemption of state law, we believe provides ample authority and precedent for this court to understand the matrix in which this arises. Fully further, there's another 12 cases, which I believe we've cited, where various courts throughout the land, albeit not this one, have recognized that the reverse preemption of McCarran-Ferguson is to maintain the state's strong interest in the regulation of the business of insurance rather than the overarching grasp of the Federal Arbitration Act, which seems to relate more to commercial contracts rather than those special contracts that are regulated by state statute. Also, Your Honor, I hope that the brief that we sent out on Monday with the three cases since briefing has arrived at the court. If it's not, I must admit my own failing that I left it at the hotel room this morning and grabbed it in the wrong papers. But I do know that on Monday we fed X to the court three additional cases, which again stand to the provision that courts have universally found that the McCarran-Ferguson Act and its reverse preemption saves from Federal regulation the right for states to regulate solely business of insurance. Counsel, one of the problems we have with the size of our operation here is that it takes a while for the mail to get from the mailroom to the individual judges. I don't believe I've received it. Nor did I. Well, I don't mean to take my time to be frivolous, but I will tell the court that in our county and state court, you don't merely file with the clerk. You must file a second copy with the court. It'll get to us. That's the point. It'll get to us well before any final decisions are made. And in final, if I may, we have a situation here where the appellee has tried to argue somehow that equitably this is an appropriate public policy to enforce an adhesionary contract without meeting the provisions of the law. We would point out that the tour that we were made to take throughout the entire proceedings in district court, being referred to the arbitrator, the elective contractor, evidence being taken without it being fully of record and without the rules of evidence and such, has genuinely precluded what is a basic fundamental right of my client, and that is the right to a jury trial while all the evidence can be presented. I'd like to reserve the minute and a half I have left. You may do so, counsel. Thank you, Your Honor. Mr. Malone, is that correct? Yes, pronounced like it had an A, which has caused me a lot of problems over the course of my life. Matthew Malone on behalf of Blue Cross. Oh, Malone. Okay, very good. Yes, thank you. Thank you. You may proceed. Your Honors, I think to first point out that in July 1998, Blue Cross sent a letter to Ms. Stewart stating that we would pay for all the disputed claims and point out her appeal procedures to her if she wanted to follow up. Despite this, she filed a lawsuit in September 1998. As part of that lawsuit, we moved to compel arbitration under the arbitration clause in her contract. At no time did we believe that this statute at issue, the 695B181, invalidated or prevented the arbitration clause in the contract. We went forward with the arbitration after the court stayed the case above the plaintiff's opposition, and then after an arbitration award in favor of Blue Cross, we received for the first time in opposition stating that this statute 695B181 was invalidated, invalidated the arbitration clause. By the way, do you agree that the plaintiff opposed arbitration before the magistrate? I agree that the plaintiff opposed the arbitration, but the plaintiff did not oppose arbitration on the grounds that we're here on today. The plaintiff opposed arbitration stating that, similar to our estoppel argument before this court, that we waived arbitration through our right to compel arbitration through our acts or words in telling her that her only remedy would be go to the Nevada Division of Insurance. The issue about whether this statute invalidated the arbitration clause did not come up until after the arbitration, the unfavorable result, the plaintiff, and in the motion to confirm arbitration by Blue Cross and the opposition by the plaintiff. That was the first time we came up with this, and that's why I cited to the Engra case out of the Fifth Circuit, stating there's some prejudice here because we're going to be forced to relitigate a claim we thought was resolved through the arbitration. I was not present at the arbitration. I know there was no transcript taken. I don't know. I can't speak to what plaintiff argued there. It was my understanding that, although arbitration was opposed generally, the specific argument about NRS 695B-181 was not presented in the arbitration. The heart of our waiver is not that she never opposed the arbitration agreement. It's that she never rose this argument regarding this particular statute invalidating the arbitration agreement. I think getting to the next question is does this statute actually invalidate the arbitration agreement, and this is where we would argue that it does not. The statute contains a Section 4, which states that arbitration agreements that follow the language presented in Section 1 would not be considered contracts of adhesion or enforceable. We think this plays into the policy in Nevada favoring arbitration of disputes, which is unlike a lot of the other states in the cases that plaintiff has cited. We feel that this section provides a safe harbor provision, whereas if we followed the language in that statute, there could be no argument that this would be unenforceable or contract of adhesion. It would be per se enforceable. We think that's what the Nevada legislature intended by this passing NRS 695B-181, and that's why this statute does not invalidate the arbitration clause. Getting to the issue of ---- Are you also arguing a waiver, or are you primarily arguing a statutory construction? The waiver, excuse me, Your Honor, waiver of the plaintiff of the arbitration, yes. I think our primary argument is that we've gone through the arbitration. We've gone through opposition to the arbitration. Plaintiff opposed the arbitration in 1998 when this statute was passed in 1995 and did not bring up this statute at all until after the arbitration was unsuccessful. She asked approximately $800,000 in damages from the arbitrator, even though her claims had already been paid. And then we get to the after that arbitration award is a zero award or is an unfavorable award. Then is the first time we hear about this statute. That's our primary argument. I understood Mr. Parsons to say that even somewhere in the record, and I'd like to know precisely where, there is evidence that in the course of the arbitration itself, which she had already opposed in district court when she opposed the stay, but somewhere in the course of the proceedings themselves she said, I don't feel that I should be bound by this outcome no matter what it is, and even before she knew that it was unfavorable to her. Do you concur with that characterization of the record? No, Your Honor. I believe the only thing in the record is the arbitrator's decision. There was no transcript at the arbitration taken, and that the arbitrator's record or decision does not reflect that. The arbitrator's decision reflects that he decided that there was no preexisting condition and Blue Cross was never bound to pay these claims. They paid them anyway, so there should be no additional damages as far as emotional distress or any other compensatory damages. I forget if punitive damages were an issue in this case. What are you saying? The arbitrator's decision only addresses the merits of the dispute and not any challenge? What I'm saying is that's the only record we have of the arbitration, Your Honor, and that is all the arbitrator's decision addresses. From that, I don't think we can be sure whether or not it was addressed in the arbitration or what the arbitrator's decision on that was. As I said, I was not present at the arbitration, but the only record is not there's no transcript. There's no other record of the arbitration other than that decision, and that decision has a finding on the merits. Well, of course, it's not surprising in an arbitration proceeding that there's no record because there's no right to appeal. I'm certainly not on questions of fact, but on the other hand, I don't know about Nevada, but around where I used to practice, if anybody participating wanted to make a record, they were free to do so. In other words, you could bring a reporter to the arbitration proceeding. I believe Blue Cross did order a court reporter, and after a conference inside the arbitration between counsel, it was decided that the court reporter would not be used at the request of plaintiff's counsel. So you understand that was agreed amongst all the participants in the arbitration? I believe that once plaintiff's counsel stated that they did not want a court reporter present, that Blue Cross didn't object and that we had ordered one in the case that counsel did agree. Turning to the McCarran-Ferguson arguments that plaintiff has made, and again, just to clarify, we think that the plaintiff has waived her argument regarding the invalidation of the statute. Second, that 695-D-181 doesn't invalidate our arbitration agreement. And third, assuming that it did, the question is, is this statute saved from preemption from the FAA by McCarran-Ferguson? I think this is where we get into the briefing a little bit as far as risk sharing. Is it an integral part of the policy relationship, and does the law regulate the insurance industry? I would have to say that the first thing I want to point out is our statute, regardless of how you end up interpreting it, whether you adopt our interpretation or not, is different than the statutes in all these other states. The statutes in the other states, in the West case out of the Eighth Circuit out of Kansas, the Cox case out of South Carolina, the Great Plains case out of Missouri, I believe it is. I might have the Great Plains and West reversed. It might be Kansas and Missouri the other way. They all have either prohibitions on arbitration and insurance contracts or a mandate that disputes over arbitration contracts, insurance contracts, go to state court and not arbitration. Our statute, no matter how you read it, doesn't have that. Our statute is still permissive whether you want to have it in the contract or not. You can go to arbitration. You can go to state court. You can go to federal court if it's a diversity case. There's plenty to fit in this one. There's no mandate that arbitration not occur. And I think this starts to take it out of the realm of McCarran-Ferguson because it takes it out of regulation of insurance and into just common law interpretation of arbitration agreements. I think with respect to risk sharing, I think even the Smith and Imbler California case is cited by plaintiffs to court me on this. I don't see how dispute resolution can affect the risk sharing between the parties. The risk is a matter of, from the Washington Physician Services case decided by this court, risk sharing is a matter of what treatments will be paid for, deductibles, caps on services, caps on cost. If a service is covered under this policy, it's covered regardless of who decides it. If it's not covered, it's not covered. And it doesn't get into the risk to say who decides it. Therefore, in our statute, unlike the other statutes, it's not that a jury decides it or an arbitrator decides it, that either could decide it under NRS 695B181. There's no prescription on either form of dispute resolution. Getting to whether or not it's an integral part of the policy relationship, again, this is an optional statute no matter what. And it doesn't particularly dictate the terms of the relationship between the parties. There is no mandatory language. The statute doesn't say you need to have this language in a contract. Even if you accept the plaintiff's interpretation, it's saying if you want to have an arbitration clause in the contract, it should have this following language or these following disclosures. I think this takes it one step further. Don't you think that the purpose of having that requirement was to affect the rights of both parties, particularly and probably to protect the rights of the insured? Vis-à-vis the insurer? Your Honor, I can see where your argument is on that point. However, I think that we're still talking about we're taking it another step away from that requirement. Well, if you think the answer to that question in short is yes, that underlying the statute was the objective of affecting and maybe protecting the rights of both sides, but certainly of the insured, then how can you conclude that it's not a statute that governs the relationship between the two? Okay. Your Honor, I don't agree with that interpretation of the statute. I think that that statute was solely put in place to allow an insurer to have a per se enforceable arbitration agreement to avoid the argument that an arbitration agreement is a contract of adhesion. Now, if you're asking me to accept as a premise that the arbitration, that clause is in there to have mandatory terms of an arbitration contract, yes, then I'd have to agree with you at that point. Thank you, counsel. Your time has expired. Thank you. Mr. Parsons, you have some reserved time. Thank you. Your Honor, if I may, first of all, I'd point out that unlike what counsel just characterized, 695B181 doesn't say should. In every operative section, the word must is included. And if that is not a clear and unequivocal indication of the legislature's intent, I don't know what it would take. Secondarily, I believe that not only has McCarran-Ferguson been modified, the U.S. Supreme Court in Ward said that the approach to take is a common sense approach. And if the provision of this arbitration provision does not ameliorate risk amongst various carriers, as we've seen today, what the carrier has tried to indicate to this Court is that there's an economic benefit to avoid litigation. That economic benefit results in profit to the company. And in the light of that profit to the company, it should reduce the amount of underwriting expense because they're not going to have to pay certain claims that are going to be litigated. It clearly meets the first prong of McCarran-Ferguson. And if I may, Judge Matz, I think that you hit the nail right on the head. If I may be able to indulge somewhat in your finding, or at least your indication, this is not a situation where it's permissive to the extent of saying, here's kind of the optimal standard provision that you can include, but if you choose not to, go ahead and do whatever you want to do. It says that the only defense you have to the contract being adhesionary is if you include this provision and you follow it intactly, then that will be an enforceable arbitration provision. And to the exclusion of all others, it would not be a proper construction of statute to say that this was merely a model and that any other ad hoc decision that the carrier wishes to impose will be enforceable. It, in fact, will fail under Nevada law. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, Matz